**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LORENZO L. JONES,

      Plaintiff,

v.

STATE OF MICHIGAN,

      Defendant.

_____/

Case No. 02-74336

Hon. Victoria A. Roberts

<u>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**</u>

**I.     INTRODUCTION**

This is a civil rights action brought by Plaintiff Lorenzo Jones pursuant to 42

U.S.C. § 1983.  The case is back before the Court following appeals to the Sixth Circuit

Court of Appeals and the United States Supreme Court.  The lengthy procedural history

is outlined below.

The matter is now before the Court on Defendants' Motion for Summary

Judgment [Doc. 68].  Jones filed a Response.  For the reasons stated, the Motion is

**GRANTED**.

**II.     PROCEDURAL BACKGROUND**

Jones filed this civil rights lawsuit *pro se* on November 15, 2002, when he was a

Michigan prison inmate incarcerated at the Saginaw Correctional Facility ("SCF").  He

has since been released on parole, on February 17, 2009 (see

http://www.state.mi.us/mdoc/asp/otis2.htm).

1

Jones' Complaint named Warden B. Bock, Deputy Warden V. Chaplin, Classification Director P. Morrison, Correction Officer Opanasenko, Nurse Konkle, and Dr. Aldabaugh as Defendants, and sought relief under 42 U.S.C. § 1983 for deliberate indifference to medical needs, retaliation and harassment.

Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(6). The Court referred the matter to a Magistrate, who issued a report and recommendation that the claims against Bock, Chaplin, Konkle and Aldabaugh be dismissed, and that the claims against Morrison and Opanasenko proceed. The Court accepted the recommendation and dismissed claims against Bock, Chaplin, Konkle and Aldabaugh. However, the Court overruled the Magistrate's finding regarding Morrison and Opanasenko, and dismissed the claims against them as well. The Court ruled that Jones did not properly plead exhaustion, because he did not state his claims with specificity and did not show the claims were exhausted by attaching copies of the grievance dispositions to the complaint. *See* Doc. 34.

Jones appealed the ruling regarding Opanasenko and Morrison. (He did not appeal the dismissal of Bock, Chaplin, Konkle and Aldabaugh.). In a *per curiam* decision, the Sixth Circuit affirmed this Court's ruling, finding that the "total exhaustion" rule applied in the Sixth Circuit and Jones failed to comply with the exhaustion requirement as defined by Sixth Circuit precedent. See *Jones v. Bock et al*, 135 Fed Appx 837 (6th Circuit 2005).

The United States Supreme Court reversed the Sixth Circuit, concluding that there was no heightened pleading standard for exhaustion of administrative remedies, but rather that exhaustion was an affirmative defense to be raised and proven by the

defendant. See *Jones v. Bock et al*, 549 U.S. 199, 216, 127 S Ct 910, 166 L Ed 2d 798 (2007). The Supreme Court further held there was no total exhaustion requirement in the Prison Litigation Reform Act. *Id.* at 223-224. The Supreme Court remanded the case to the Sixth Circuit, which in turn remanded the case to this Court for further proceedings consistent with the Supreme Court's *Jones* opinion.

Counsel filed an appearance for Jones on April 29, 2009, the day after the Sixth Circuit's appeal mandate issued. Defendants subsequently filed a Motion for Summary Judgment, which is now before the Court. As explained below, only the claims against the State of Michigan, the Michigan Department of Corrections ("MDOC"), Morrison, and Opanasenko remain, and are addressed in this Order.

## III.   FACTUAL BACKGROUND

The events which form the basis of Jones' claims occurred during his incarceration at SCF. Jones' factual allegations are accepted as true for purposes of this Motion.

On November 14, 2000, Jones was transported in a prison van which was involved in a highway roll-over accident. Jones suffered serious personal injuries, including a cervical fracture and spinal cord injury which required surgery. He has permanent impairments in strength, sensation, coordination and function. Jones claims the MDOC had specific knowledge of his injuries, due to civil litigation after the accident.

Jones arrived at the SCF on April 25, 2001. Defendant Paul Morrison, MDOC Classification Director, completed Jones' initial classification screening on May 2, 2001. Classification screening is conducted to classify prisoners for school and work assignments. Although prisoners may state a preference for work assignments, such

preferences do not guarantee a specific work assignment. Jones gave a preference for law library or "pop can man" jobs, but was advised by Morrison that he might not get those jobs because they were in high demand. Morrison also advised Jones that Jones would be placed in a general job pool.

During Jones' classification screening, Morrison prepared a Program Classification Report, Form CSX-175, with Morrison's program recommendations for Jones, including referrals for work assignments. The Form has a box for medical status, with options to check: "no assignment," "light duty" or "full duty," and a box for medical comments; Morrison left both blank.

However, according to Jones, he told Morrison about his medical condition during the classification screening. Jones also says his injuries were obvious upon casual observation because he wore a neck brace and walked with a cane. Jones alleges that despite these limitations, Morrison placed him in a work classification that Morrison knew or should have known was physically impossible for Jones to perform without re-injury or aggravation of his injuries. Morrison denies these contentions.

On May 15, 2001, a Special Accommodation Notice ("SAN"), Form CHJ-244, was approved for Jones. The SAN Form instructs that '[t]his form is to be completed only when medical condition or physical disability affects placement, housing, work assignment, or requires special supplies/equipment." The SAN Form further instructs that "[i]f accommodations are temporary[,] record date accommodation must be reviewed beside checkbox"; no date is recorded on the form. The SAN shows that Jones required a bottom bunk, neck brace and wooden cane; it does not list work restrictions.

On July 19, 2001, Jones was assigned to an unskilled, light duty work assignment as the Big Yard Equipment Handler. The job required Jones to lift the standard baseball equipment bag (which contained gloves, balls, and two bats), horseshoes, basketballs and other sports equipment, as well as bend, stoop and stand for long periods during his work hours.

Jones says he immediately informed the supervising officer, Defendant Opanasenko, when he reported to his assigned work area, that he was unable to perform the job due to his injuries. Jones says Opanasenko told Jones nothing was wrong with him, claimed Jones was faking his condition, and threatened to write Jones a misconduct ticket if Jones did not perform the work assignment. Jones says he was wearing a neck brace, leg brace, walked with a cane, and was taking prescribed pain medication at the time.

After that incident, Jones claims Opanasenko engaged in several harassing and retaliatory acts against him. On August 20, 2001, Opanasenko threatened to place Jones in segregation after Jones refused to lift a baseball bag. On August 21, 2001, Opanasenko wrote a false work evaluation which stated that Jones (1) was a poor worker, (2) appeared threatening when stating that he could not perform the work duties, and (3) wished to be removed from the work assignment; Opanasenko recommended Jones' termination. On the same day, in an attempt to have Jones placed in administrative segregation, Opanasenko told a Lieutenant that Jones stared at Opanasenko in a threatening manner. For the next few days, Opanasenko winked at Jones and made comments such as, "how does it feel to get paperwork written against you," or "you need to quit it, there's nothing wrong with you." Opanasenko denies these

contentions.

On September 25, 2001, Jones filed a Step I grievance against "the Classification Director, Health Care, Warden, Deputy Warden and Officer Opanasenko." After the Step I grievance was not resolved to Jones' satisfaction, he filed Step II and Step III appeals. The appeals officer concluded the Step I and Step II responses adequately addressed the merits of Jones' grievance, and closed the file.

Jones' Complaint alleges the actions of Morrison and Opanasenko violated his *First*, *Eighth* and *Fourteenth Amendment* rights under the United States Constitution; inflicted emotional distress on him; and, caused him physical pain and suffering. Jones seeks a declaratory judgment, injunctive relief, compensatory damages, and punitive damages. Defendants move for summary judgment.

## IV.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party, and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v.*

*Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## IV.    ANALYSIS

### A.    Overview

Jones seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal

right of action against any person who, acting under color of state law, deprives an

individual of any right, privilege or immunity secured by the Constitution or federal laws.

*Burnett v. Grattan*, 468 U.S. 42, 45 n. 2, 104 S. Ct. 2924, 82 L. Ed. 2d 36 (1984); *Stack*

*v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).

To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of

rights secured by the Constitution and laws of the United States, and (2) that the

defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840

F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.  Because § 1983 is a method for

vindicating federal rights, not a source of substantive rights itself, the first step in an

action under § 1983 is to identify the specific constitutional right allegedly infringed.

*Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

Then, where the defense of qualified immunity is raised, the court should

determine whether a constitutional violation has been established:

> A court required to rule upon the qualified immunity issue must
> consider, then, this threshold question: Taken in the light most
> favorable to the party asserting the injury, do the facts alleged show
> the officer's conduct violated a constitutional right? This must be the
> initial inquiry.
>                                    * * *
> If no constitutional right would have been violated were the
> allegations established, there is no necessity for further inquiries
> concerning qualified immunity. On the other hand, if a violation could
> be made out on a favorable view of the parties' submissions, the
> next, sequential step is to ask whether the right was clearly

established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272(2001)(internal citation omitted).

Jones alleges constitutional violations of the *First*, *Eighth* and *Fourteenth Amendments*. The Court analyzes Jones' claims against this framework.

**B.   Claims Against Bock, Chaplin, Aldabaugh and Konkle**

Defendants argue that Jones cannot assert any claims against, or contest this Court's dismissal of, Defendants Bock, Chaplin, Aldabaugh and Konkle, because he did not appeal their dismissal in his initial appeal. Jones does not address this argument.

Since Jones did not appeal the dismissal of those Defendants, the claims against them are waived here. See *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 n. 1 (6th Cir. 2006) citing *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998). Only the claims against the State of Michigan, the MDOC, Morrison and Opanasenko remain**.**

**C.   Exhaustion of Administrative Remedies – Eighth Amendment Claims Against Opanasenko and Morrison**

Prior to filing a civil lawsuit, a prisoner must first exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[I]t is not enough simply to follow the grievance procedure; in order to satisfy the administrative exhaustion requirement, the content of the grievances must also be adequate. To be adequate, a grievance must identify each defendant eventually sued. *Curry v. Scott*, 249 F.3d 493, 504-05 (6th Cir. 2001). Second, "a prisoner must have alleged mistreatment or misconduct on the part of the defendant" in his grievance. *Burton*, 321 F.3d at 575. This adequacy standard is not a

particularly strict one:

> In describing the alleged mistreatment or misconduct, . . . we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint. *Id.*

MDOC Policy Directive 03.02.130 (effective 11/1/2000), which was in effect when Jones filed his grievance, required that a grievance statement be "as specific as possible." Pl. Exh. 2. At the same time, "[t]he Step I grievance form provided by MDOC (a one-page form on which the inmate fills out identifying information and is given space to describe the complaint) advised inmates to be 'brief and concise in describing your grievance issue.'" *Jones*, 549 U.S. at 207. The grievance policy says the grievant at Step I "shall have the opportunity to explain the grievance more completely at [an] interview, enabling the Step I respondent to gather any additional information needed to respond to the grievance." Pl. Exh. 2; *Jones*, 549 U.S. at 218.

On September 15, 2001, Jones filed Step I Grievance No. SRF 01-09-01068-02a. He raised two claims: (1) Officer Opanasenko harassed Jones after Jones said he could not handle certain sports equipment, fabricated an evaluation work form, and threatened to write a behavior misconduct ticket in an attempt to have Jones placed in segregation, and (2) Officer Opanasenko, Health Care, Classification, the Deputy Warden and the Warden, required Jones to work beyond his physical capabilities.

Jones says in this grievance that "[a]t the time of the above incident, Plaintiff was wearing a neck brace and walking with a cane, (although Plaintiff still walk (sic) with a cane to this date), due to a November 14, 2000 automobile accident in which my neck

was broken and I suffered spinal cord injuries . . . Officer Opanasenko, Health Care, Classification, Deputy Warden and Warden, know, knew or should have known that their actions was (sic) in direct violations (sic) of plaintiff's, First, Eighth and Fourteenth Amendment Constitutional Rights and Civil Rights, where all the above defendants required Plaintiff to work beyond that of his physical capabilities." Def. Exh. 1. Jones filed Step II and III appeals.

Defendants contend that at Step I of the grievance process, Jones emphatically denied asking to be removed from the work assignment, and did not say he lacked medical clearance for the assignment. They also say Jones never complained at any step of the grievance process that the work aggravated a prior injury. Thus, Defendants argue that Jones' *Eighth Amendment* claims should be dismissed without prejudice, because he failed to provide fair notice to Opanasenko and Morrison, and hence failed to exhaust his administrative remedies. The Court disagrees.

Jones' Step I grievance clearly stated his claims that (1) Jones had physical injuries and Defendants were aware of them, (2) Morrison and Opanasenko forced him to perform work beyond his physical capabilities, and (3) Opanasenko threatened Jones when Jones said he could not perform the work.

Jones makes the same claims in his Complaint, which the Court construes as stating an *Eighth Amendment* deliberate indifference claim. See *Farmer v. Brennan*, 511 U.S. 825, 834, 128 L.Ed. 2d 811, 114 S. Ct. 1970 (1994) (the legal elements of an *Eighth Amendment* deliberate indifference claim include proof of a defendant's sufficiently culpable state of mind. The question under the *Eighth Amendment* is whether prison officials, acting with deliberate indifference, exposed a prisoner to a

sufficiently substantial "risk of serious damage to his future health").

Even though Jones alleges for the first time in his Complaint that he re-aggravated the injuries to his back, neck and shoulders when he was forced to work beyond his physical capabilities, Complaint at ¶ 22, 23, these are merely facts which support his deliberate indifference claim. As the Sixth Circuit explained:

> [F]or a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process. In describing the alleged mistreatment or misconduct, however, we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint. *Burton*, 321 F.3d at 575.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

MDOC's policy required an inmate's grievance to be "as specific as possible," while MDOC's mandatory form instructed the inmate to be "brief and concise." Jones' grievance stated the alleged misconduct – that he was forced to perform work beyond his physical capabilities. In light of what could be construed as conflicting MDOC policy provisions, the Court concludes that Jones' Step I grievance statement gave fair notice of his constitutional claims, and the deliberate indifference claims may proceed.

**D.  Eighth Amendment Deliberate Indifference Claim Against Opanasenko**

Jones' Complaint alleges that "[d]ue to a motor vehicle accident within the Michigan Department of Corrections on November 14, 2000, as a proximate result of that accident the Plaintiff suffered the following injuries: Traumatic C5-C6 fracture dislocation with myelopathy, requiring open reduction, posterior wiring of C5 to C6, posterior fusing of C5 to C6 and harvesting of iliac bone from the right posterior iliac crest area. Small anterior hematoma in the spinal cord which resulted in temporary paralysis. Hairline fracture of the left arm. Abrasion to the scalp. Lower back injuries. Weakness in the upper and lower extremities on the left side. Numbness of entire body below the neck." Complaint at ¶ 14.

The Complaint further alleges that:

(1) ". . . the Plaintiff reported to the assigned area, at that time, Plaintiff informed officer Opanasenk (sic), that the Plaintiff was unable to perform the requirements of said work assignment," Complaint at ¶ 11;

(2) [d]espite the obvious nature of Plaintiff's injuries, Officer Opanasenko told Plaintiff, that if the Plaintiff is not on the work assignment, that Plaintiff would be cited for a Major Out of Place. That there was nothing wrong with the Plaintiff," Complaint at ¶ 13; and

(3) "[t]hat at the time of the alleged incident herein, the Plaintiff was wearing a neck brace, left leg brace and walking with a cane, and under the medication of Baclofen, which causes fatigue, with a sedated side effect," Complaint at ¶ 15;

To show deliberate indifference to workplace safety, prisoners must show that prison officials "knowingly compel[led them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly

painful." *Ray v. Mabry*, 556 F.2d 881, 882 (8ᵗʰ Cir. 1977).

An *Eighth Amendment* claim has two components, one objective and one subjective. To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer,* 511 U.S. at 834. To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Farmer*, 511 U.S. at 837.

Proving that a defendant had a sufficiently culpable mental state to make him liable for deliberate indifference is the plaintiff's burden. *Comstock*, 273 F.3d at 703. This burden can be met "in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Jones presents the medical evaluation report of Dr. Carol Vanderharst to establish that he had obvious injuries when his work assignment was made on July 19, 2001. According to Vanderharst's report, she examined Jones on June 27, 2001 and diagnosed him with (1) cervical fracture C5 with subluxation and spinal cord injury, (2) cervical sprain with ligamentous damage, (3) posttraumatic headaches, (4) thoracic pain with somatic dysfunction of the spine, (5) low back pain and (6) wasting syndrome. Pl. Exh. 1. Vanderharst opined that Jones would have "permanent impairments in material handling, push, pull, lift or carry due to balance dysfunction and weakness," and would not be able to "utilize either upper extremity in repetitive grasp or fine motor activities." *Id.* She also opined that Jones' vocational options would be limited to sedentary and/or

13

seated employment. *Id.*

Jones says there is a material issue of fact, because not only did he tell Opanasenko he was unable to perform the job, but the risk of injury was obvious because Jones wore a neck brace and walked with a cane. Defendants counter that Jones cannot make out a deliberate indifference claim; wearing the neck brace and using a cane did not mean that Jones was unable to do any work. They note the work assignment was light duty. Defendants also say there is no evidence that Opanasenko saw Vanderharst's report or that it was in Jones' MDOC medical file. The Court agrees.

Opanasenko says by Affidavit that Jones never told Opanasenko that he could not perform the work duties due to physical limitations. Opanasenko also denies telling Jones that Jones was faking his condition or that a misconduct report would be written. Jones does not rebut this evidence by Affidavit or otherwise, and hence, fails to meet his burden of proof on the *Eighth Amendment* claim against Opanasenko. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (Once the moving party meets his burden to show an absence of evidence to support the non-moving party's case, the non-moving party cannot rest on its pleadings, but must present "significant probative" evidence in support of the complaint to defeat the motion.).

Moreover, even if true, Jones' complaint can only be construed to raise a claim against Opanasenko under a negligence theory. Deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm. See *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251(1986) (holding that a violation of the Eighth Amendment must involve "more

14

than an ordinary lack of due care for the prisoner's … safety").

Summary Judgment is **GRANTED** on the deliberate indifference claim against Opanasenko.

### E.    Eighth Amendment Deliberate Indifference Claim Against Morrison

Prison work assignments are considered conditions of confinement subject to scrutiny under the *Eighth Amendment. Choate v. Lockhart,* 7 F.3d 1370, 1373 (8th Cir. 1993).  To establish an *Eighth Amendment* violation based on prison workplace safety, a plaintiff must show deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).

Jones' Complaint alleges that (1) "[d]efendant Morrison, knew that due to Plaintiff (sic) current condition that Plaintiff was unable to perform the within work assignment, Complaint at ¶ 17; and (2) "Plaintiff had verbally communicated with defendant Morrison and defendant Morrison knew of the Plaintiff (sic) condition," Complaint at ¶ 17.   In support of his claim against Morrison, Jones presents the medical evaluation report and deposition testimony of Vanderharst.

At her July 16, 2003 deposition, Vanderharst testified that when she examined Jones in June 2001, Jones was emaciated, stood and walked poorly, and had generalized spasticity with balance dysfunction and poor coordination. Pl. Exh. 2, p. 11. This was only 55 days after Morrison's classification meeting with Jones, and two weeks prior to Jones' job assignment.

Defendants argue that Morrison is entitled to summary judgment because he was unaware Jones had any medical restrictions and did not assign Jones to the equipment handler job.  Defendants present Morrison's Affidavit, in which he states that Jones' file

15

did not contain any accommodations due to medical limitations and none was noted on the CSX-175 he prepared. See Def. Ex. 3. Morrison cannot say whether Jones wore a neck brace and carried a cane during their meeting, but he does know that Jones did not provide documentation of any medical limitations or verbally communicate to Morrison that Jones was physically unable to perform any job assignment. *Id.* Morrison also says that he did not prepare the Form CSX-225, assigning Jones to the equipment handler job. Jones does not rebut this evidence by Affidavit or otherwise.

As Defendants point out, the SAN was approved on May 15, 2001, nearly two weeks after Morrison completed Jones' classification screening. There is no evidence that Morrison was ever advised of this accommodation notice or of Dr. Vanderharst's diagnoses. Likewise, Morrison did not check the boxes on the CSX-175 for medical status and comments, so there is no evidence regarding Morrison's perceptions of Jones' physical status and capabilities.

Jones suggests that because Morrison met face to face with Jones and saw that Jones wore a neck brace and walked with a cane during the classification screening, Morrison knew or should have known of Jones' inability to perform non-sedentary work. This allegation, even if true, is insufficient to establish a genuine issue of material fact concerning Morrison's alleged deliberate indifference. See *Farmer*, 511 U.S. at 838 (an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.).

Summary judgment for Morrison is **GRANTED** on Jones' *Eighth Amendment* deliberate indifference claim against him.

**F.     First and Eight Amendment Harassment and Retaliation Claims
         Against Opanasenko**

To establish a *First Amendment* retaliation claim, Jones is required to prove that:
(1) he engaged in protected conduct; (2) an adverse action was taken against him that
would deter a person of ordinary firmness from continuing to engage in such conduct;
and (3) there is a causal connection between the adverse action and his protected
conduct. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).

Jones complains that Opanasenko fabricated an evaluation work form and
threatened to write a behavior misconduct ticket in retaliation for Jones' complaints of
physical inability to complete the work assignment.  Jones alleges Opanasenko did this
in an attempt to have Jones placed in segregation, and that Opanasenko's actions
could adversely affect his parole hearing.

A transfer to administrative segregation would be considered a sufficiently
adverse action. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999).  However,
Jones presents no evidence that he was ever placed in segregation because of
Opanasenko.  Moreover, Jones presents no evidence that he was denied parole
because of Opanasenko.  The fact that Jones successfully obtained parole is probative
evidence that he did not suffer adverse action due to Opanasenko's conduct.  Because
Jones does not establish that he suffered an adverse action as a result of
Opanasenko's actions, Jones' *First Amendment* retaliation claim fails.

Jones' *Eighth Amendment* harassment and retaliation claims are similarly
deficient.  The *Eighth Amendment* imposes a constitutional limitation on the power of
the states to punish those convicted of crimes.  Punishment may not be "barbarous,"

nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The *Eighth Amendment* is only concerned with "deprivations of essential food, medical care, or sanitation," or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the *Eighth Amendment*." *Ivey*, 832 F.2d at 954. "[A] prisoner is expected to endure more than the average citizen . . . ." *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006).

Jones' allegations that Opanasenko threatened to have Jones placed in segregation, and constantly harassed and degraded Jones about his medical condition and ability to perform the job, do not rise to the level of a constitutional violation. See *Snyder v. Bradley Co. Justice Center*, 2008 U.S. Dist. LEXIS 43891, 2008 WL 2357645, *6 (E.D. Tenn. 2008), citing, *Williams v. Gobles*, 2000 U.S. App. LEXIS 8893, 2000 WL 571936, at *1 (6th Cir. 2000) (neither verbal harassment nor threats constitute punishment within the context of the *Eighth Amendment*); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (federal right must be actually denied, not merely threatened); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (explaining that verbal abuse is not cognizable under § 1983).

Summary judgment for Opanasenko is **GRANTED** on Jones' *First* and *Eighth*

*Amendment* harassment and retaliation claims.

### G. Fourteenth Amendment Claims Against Opanasenko

#### 1. Due Process Claims

The *Fourteenth Amendment* protects against deprivations of life, liberty, and property. To claim a violation of due process, a prisoner must show that he has: (1) a life, liberty, or property interest created by the Constitution or state law; (2) deprivation of that protected interest; and (3) state action affecting the deprivation of that interest. See *Parratt v. Taylor*, 451 U.S. 527, 536-37, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981). Liberty interests are implicated when a prison imposes atypical and significant hardship on a prisoner in relation to ordinary prison life. *Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

Jones complains that Officer Opanasenko's threats and harassment violated the *Fourteenth Amendment*. Jones also alleges that Opanasenko violated the *Fourteenth Amendment* by making Jones perform job duties beyond Jones' physical capabilities. Since he does not specifically articulate the basis of the violation, the Court presumes he is asserting substantive due process as a distinct and overlapping source of protection. Jones' allegations, however, are insufficient to establish either a constitutional violation, or liability under § 1983.

Only government conduct that is arbitrary or conscience shocking in a constitutional sense, can form the basis for a substantive due process claim. 503 U.S. 115, 116, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). A threat by a jail or prison officer is not *per se* unconstitutional; an inmate has no protectable right not to have threats made against him. *Snyder,* 2008 U.S. Dist. LEXIS 43891 at *6.

19

Likewise, Jones' allegations against Opanasenko state mere negligence. "In the workplace safety context, … mere negligence or inadvertence is insufficient to constitute deliberate indifference" as required to establish a constitutional violation. *Stephens v. Johnson*, 83 F.3d 198 (8th Cir. 1996). Because mere negligence on the part of prison officials does not rise to a violation of the *Eighth* or *Fourteenth Amendment*, Jones' due process claim fails.

### 2. Equal Protection Claims

The *Equal Protection Clause* of the *Fourteenth Amendment* says that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; see *Michael v. Ghee*, 498 F.3d 372 (6th Cir. 2007).

"[P]risoners are not a 'protected class' for equal protection purposes." *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 851 (N.D. Ohio March 12, 2007) (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)). Accordingly, a state may treat prisoners differently, so long as the state's actions are rationally related to some legitimate governmental purpose. See *United States v. Kras,* 409 U.S. 434, 446, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973)*; S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008).

To the extent that Jones raises an equal protection claim, he again fails to state a claim which entitles him to relief. Jones does not even allege differential treatment.

Summary Judgment is **GRANTED** on Jones' *Fourteenth Amendment* claims.

### H. Claims for Injunctive Relief

"Claims for injunctive and declaratory relief seek to bring about changes in governmental operations and, therefore, must be asserted in an official capacity action or, when permitted, in an action against a governmental entity." See Section 1983 Litig.

Claims & Defenses § 9.01, citing, *County of Sacramento v. Lewis*, 523 U.S. 833, 840 n. 4, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Mumford v. Zieba*, 4 F.3d 429 (6th Cir. 1993).

Jones sued Opanasenko in his individual capacity. He sued Morrison in his individual and official capacities, and sought injunctive relief against Morrison. However, Jones' claims for injunctive relief are moot. When a plaintiff is no longer incarcerated in the institution where the alleged violations occurred, injunctive relief is no longer needed and therefore must be denied as moot. *Copenhaver v. James*, 2008 U.S. Dist. LEXIS 3515, 2008 WL 162547, *3 (E.D. Mich. 2008), citing, *Washington v. James*, 782 F.2d 1134, 1137 (2d Cir. 1986) (noting that prisoner cannot maintain § 1983 action for injunctive relief when he is no longer incarcerated where alleged violations occurred).

Summary Judgment is **GRANTED** on Jones' claims for injunctive relief.

I.      **Claims against the State of Michigan and Michigan Department of Corrections**

Plaintiff brings claims against the MDOC, and presumably the State of Michigan, under the doctrine of *respondeat superior.* However, § 1983 liability cannot be imposed under a theory of *respondeat superior. Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).

Jones' § 1983 claims against the State of Michigan and the Michigan Department of Corrections are **DISMISSED** pursuant to 28 U.S.C. §1915(e)(2)(B).

J.      **Qualified Immunity**

Because the Court finds there is no genuine issue of material fact on any of

Jones' claims, the Court need not decide whether Defendants are entitled to qualified immunity. See *Saucier,* 533 U.S. at 201.

## V.    CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety, and dismisses this case.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  March 18, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 18, 2010.

s/Carol A. Pinegar
Deputy Clerk